Good morning, Your Honor. My name is Neal Howard and I represent the appellant, the plaintiff. There's no question that the plaintiff in this case was denied the right to give birth to her own children from the ruling of the district court. There's no question that the plaintiff in this case was never made whole. She was 18 years of age at the time that she went to the hospital to give birth to her first child. There's no question that as a result of medical negligence, she lost her uterus and went over it. And there's no question that after such negligence, which was found by the district court, she was still capable of giving birth to her own children through the use of infertility treatment and the use of a surgeon. The district court denied her that right. And it's obvious why the district court came to that conclusion. Because they told, the court told us in the record, and there's two dates, May 21st, that he had real issues with one, the fact that she was young. Two, that she wasn't married. Three, that she had limited economic means available to her. The court specifically said, it's page 11 of the transcript, your damages. I'm going to tell you flat out, your damages are not persuasive at all. Other than, not even close to this, I would have other children. And I don't want any argument in that. You go to the court of appeal. I do not for one second subscribe to someone who is in a non-marital relationship, who is nobody in support of these children, who is an ongoing poor relationship with her, the cohabitor, who craved this baby with her, who has a bad relationship with her, with this fellow's mother, is somehow going to go out on her own and artificially create three new babies. It's not going to happen. Isn't that on the first day? Yes, sir. And what happened on the second day? Second day, after I gave the court a brief, which demonstrates in the California law that individuals, in particular this plaintiff, had a constitutional right to give birth to their own children. He then changed it. And he said, well, there are certain things, now he looked for speculation, explaining his decision not to give out speculation. Maybe she's not going to get married. Maybe when she gets married, her husband's going to have so many children that she won't want to have additional children. Maybe her husband won't agree to a surrogate. Maybe they won't be able to find an acceptable surrogate. I find those comments, Your Honor, to be speculative. I think that if you look at the totality of the picture, you get the feeling that there was a decision not to give this woman the opportunity to exercise her constitutional right to have additional children. She was 28 years old, 18 years of age at the time of the malpractice. Her entire life is ahead of her. What evidence did you put in front of the district court that she was going to pursue a surrogate pregnancy? Two things, Your Honor. I said that the evidence was, one, that she wanted always to have four children. She has one child. She wants three more children. Her child wants additional children. We had by stipulation the testimony of experts is the only way that she could have additional children is by this use of fertility, which is available, and surrogate care. That was the evidence, Your Honor, on that issue. Well, counsel, first of all, it does not appear to me from the record that the judge was a callous. As a matter of fact, in looking at the record, and I think you would have to agree, he indicated that he was appalled by the malpractice, and if he could have given her more damages except for the California cap, he would have done so. Didn't he do that? Yes, Your Honor. All right. Now, number two. Let me ask you a hypothetical here. What if your client would have said, I come from a large family of 12 children, and I would like to have 12 children someday. So now does the judge, based only on her assertion that someday I'd like to have 12 children, award her all of the surrogate expenses for 12 children? I don't have the answer to that question. Well, no, because that, counsel, that answer is very important, because the whole basis here is, regardless of what inopportune statements the judge may have made earlier, damages have to be awarded with some certainty. District judges can't say, gee, you know, she said I'd like to have three kids, so I'm going to award her damages for three kids. She says she wants 11 kids. Now it's 11 kids. Where do you draw the line? Well, I think the judge has to weigh the evidence. In this particular case, Your Honor, she said three additional children. I don't think that's unreasonable, and I think the court should take that. Oh, is seven unreasonable? Pardon me? Is seven unreasonable? Well, I can always comment what the judge said in this case, which is on page 16, when he commented upon her testimony. It says you have the testimony, which testimony is to the effect that Ms. Sandoval came from a somewhat extended family and would like to have more children. And I'm quite confident much of what she said, if not all of it, is true. There was never a finding. There was never a statement by the court that she was not credible. There was never a finding that she didn't want to have three more children. There was never a statement on the record, other than what I just told you that she was credible about the number of children. I think in light of her family, I think it's reasonable to assume that she, as well as most women in California, would like to have more than one child. So to give her no children, where the policy is to make someone whole, she went into that hospital with the ability to have additional children on her own. That was taken away from her, Your Honor. Well, I'm not taking up anybody's brief here. I'm just telling you that there appears to be some difficulty here in where you draw the line. I mean, you know, it's one thing if a woman ‑‑ I couldn't agree with you more. I mean, I think a woman has every right to her reproductive process, all right? And this was taken away from her, sadly and tragically, through malpractice. And that's a terrible thing, and the district judge recognized that and even indicated he would have given her more damage as could he have. But then we have, you know, this is not a situation where you have a malpractice and something has happened, and another surgery could correct the problem or at least make an effort to correct it. And you could quantifiably have a surgeon come in and say, well, this is the operation that she needs to have, and this is how much it's going to cost, and she intends to have that operation. There you have some certainty. You have the doctor being able ‑‑ you have expert testimony, and some certain can be awarded and a certain operation is going to take place. But here we don't know, the district court doesn't know, nobody knows whether, in fact, after the first attempted surrogacy that will work, any of them will work. And I don't know how you draw the line. If she would have gone ‑‑ if you would have said eight children, and the district judge said, I don't think eight children is reasonable, I think four children is reasonable, then we'd be here on the issue of whether it was eight or four. Maybe, maybe not, Your Honor, but clearly we know in this case that he said no children. Based upon this evidence, I'm going to award this woman no children. I think it's clear from the record why he did that. I mean, why would he allow an examination of this witness on the stand, what is your source of income, and I object that it's irrelevant. He says it's extremely relevant. What does that show you about the position of the court in deciding this issue of whether or not she should be ‑‑ Well, in the end, despite some of his comments, in the end, he basically concluded that to award such damages in light of the evidence that was before him was speculative. The damages were too speculative. I understand that. And so for us to reverse him, we would have to say that his findings were clearly erroneous in light of the evidence. And that's a difficult thing to do. Well, but it is clearly erroneous, Your Honor. You may say that it's clearly erroneous, but under the standards that we apply, it's very difficult to do. The clearly erroneous is that he denied this woman the right to have any additional children. She is now ‑‑ Would you like to save some time for rebuttal? You have a minute and one second left. Yes, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. I'm Matthew Levinson on behalf of the defendant, Dr. Gi, from Cole Pedroza. I will endeavor not to reventilate the points in the briefs. I wanted to touch upon just a few points. The Court certainly is familiar with the standard of review and the requirements, unless there's clear error, to affirm the finding of the fact of the trial court. Appellant's counsel had, in his argument a moment ago, had told us that it's reasonable to assume that a plaintiff would want three more children or four more children, or a total of four children, from the evidence of the testimony. The difficulty that Appellant faces in that is that the testimony presented also allows a reasonable assumption going the other way, and that the trial court made the determination going the other way. Counsel, it seems to me we could assume that she wants these additional children, but is the speculation in the circumstances that occur later, whether she marries, whether she is able to get a surrogate, all of those things may seem speculative, but I think we accept the fact that she wants four children. Well, I don't know if that's something that this Court can accept, given its role in the case. The trial court in issuing... She wasn't found not credible. Well, there was the... Appellant is correct in his brief when, in both his briefs, when he says there was no express written finding that plaintiff was not credible. He didn't... The trial court, the district court, I should say, did not say that. What the district court did say in its findings of the fact was an express rejection of the plaintiff's testimony that she had wanted four children, that she still wanted four children, that she, I think, in the future... I was one of four children. Well, I think we can all agree that no district judge has the right or the authority to make moral judgments based upon somebody's marital status as to whether they should or should not have additional children. Correct. We don't... The defendant does not take issue with fundamental rights to reproduce. So all those statements, whatever they may have been, by the judge about her being unmarried or her financial status and all of these things are really not that critical for a finding here. As a matter of fact, really don't support such a finding. I would agree with that statement, Judge Ezra. I would suggest also that perhaps one way to consider it is that the trial judge and the remarks of the trial judge to which the appellant attributes an improper prejudice or bias are remarks that don't go to the cognizability of a claim for surrogate damages, but rather go to the recoverability in this particular case based on the evidence, based on the plaintiff's testimony. What do you think he could have done to present a compelling case to the district court judge that would have supported an award of this kind of damages? Well, I think the court had complimented the plaintiff's counsel in putting together a liability case but said that he needed a little bit more on the damages case. And this is at the end of the report's transcript in the 18-page or 20-page range. But what could he have introduced? He could have done a number of things. He had discussed the opportunity of putting on testimony of the plaintiff's partner when testimony from the plaintiff herself regarding what he had said was objected to and which objection was sustained on his side. The partner was in the courtroom, and there was some discussion about whether an interpreter would be needed and so forth. And the plaintiff's counsel, I think, said, no, I'm not going to put on that testimony. That would be certainly corroborative of the plaintiff's testimony about the number of children that she always wanted. I think additionally there could have been, and I don't know if this evidence exists, there's some suggestion in the record that it doesn't, that the plaintiff had made contemporaneous statements to her counselor at the Interface Children's Service that not only that she, you know, was depressed about her situation because of generally losing the uterus, and not only her complaints about the emotionally abusive relationship she complained about, but there was no evidence about the size of the family that would corroborate the only other evidence in the case, and that was her testimony in the witness stand. That's not the speculative part. I think we accept she wants the children, but then you have to go on to whether in fact she will engage a surrogate, she will go through with that and what all those costs were. That's where the speculation is. It's not whether she wants or not, it's whether in the end she would have the three children. Well, again, Judge Fletcher, I would echo my earlier response that I don't know if we can, in this posture, question as determined as clearly erroneous the trial judge's finding that she didn't want three additional children. Nevertheless, I would concur with the proposition that there's additional speculation as to whether, for example, the plaintiff was fully aware of the risks attended to her of the surrogate procedure, and that she was willing to go through with that, and she actually would want to do that. I think to add to my response to the question about what more she could have done, she could have, I suspect, put on evidence that although she at the time didn't have the resources to afford this procedure, she had at least thought about it. She had made inquiries outside of her attorney lining up an expert report that she was versed in the risks and benefits of the procedure, and that she actually would want to consent to that procedure. She herself had not consulted with a program or a doctor or a facilitator that arranges surrogacy? Judge Pius, I don't think the record, I don't know if the record suggests that, if the record indicates that she had made such a consultation outside of the, outside of any communication she may have had with the expert. She didn't testify to that, did she? She did not, that's correct. Did she meet with the expert, or was it just a report? I don't know if she had met with the expert. I don't know if the report indicates that the expert in his research and so forth had personally met with her or just looked at medical records relating to the location of the ovary, whether it was ascending or descending, and that sort of thing. She's a little bit of a catch-22 also, according, I don't remember whether this was from the record or from counsel's brief, but there was some argument that the reason counsel didn't have the more specific kind of evidence one would expect or hope to produce a trial to establish damages with some certainty is that she didn't have the money to do it. That's correct. And so she's seeking the money to do what she can't prove, you know, you understand she's going in a circle here. Well, yes and no. I think in order for her to have actually engaged and commenced the procedure, she would have needed the money. However, to have investigated. Would you agree that had she gone and lined up a surrogate and been ready to go and been able to present that evidence and the cost and so forth, the trial there would have been, that certainly wouldn't have been speculative, would it? No. It would be evidence that would be a factor that the finder of fact, the district court, could certainly consider. Whether that would have swayed the district court, you know, I don't know. But it might have, it might not. But the point is, given the evidence that was proffered, the district court, you know, reached conclusions and did not, and certainly I don't think it's clear error. I do want to touch upon, you know, briefly the idea of this bias. Bias was not raised officially in the opening brief. We attempted to, we anticipated maybe it would be raised. We think that if the matter, that there's no basis of any extrajudicial bias in the case. The remarks are well interpreted and so forth. If, of course, the court were to reverse for bias under 455, 20 U.S.C. 455, the remand would be, and the retrial would have to be for the entire proceeding, not just for a portion of the proceeding, to use the word of the statute. Okay. Thank you. Thank you, Your Honor. Thank you. Just to respond to a couple of the items that were raised by the court, the court does have as part of the record, I think it's Exhibits 8 and 19, which were admitted by stipulation, which contains the information from the expert fertility specialist retained by the plaintiff. The court had some questions about what she had done to actually have the surrogate care undertaken. And I would ask the court to consider almost another simple case where someone suffered an automobile accident and broke their arm. And they go to the emergency room and they have a broken arm and it needs to be pinned or whatever procedures needed to be pinned. And they have a court the next day and they say, look, this person was stopped. They have a broken arm. They need medical treatment for this condition. I don't think that the law imposes upon this plaintiff the obligation to bring a doctor into court and say, yes, he came to me yesterday or the day before and I'm prepared to do it tomorrow. And I've explained to them X, Y, and Z. I think that what we have to do is make somebody whole. That's the whole concept of court. Make somebody whole. Put them to the best of our ability in the position they were before this bad act. And that was give this woman the opportunity to give birth to her own children. They took that away. She's given evidence that she wants it. The court knows and heard about the credibility. I think that she has sufficient evidence presented, Your Honors. Thank you. Thank you.
judges: Ezra, Fletcher B. , Paez